```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF TENNESSEE
                    EASTERN DIVISION
```

```
LOGAN OLDS,                       )
                                  )
     Plaintiff,                   )
                                  )
v.                                )    No. 23-cv-01141-TMP
                                  )
MARTIN O'MALLEY,                  )
COMMISSIONER OF SOCIAL            )
SECURITY ADMINISTRATION,          )
                                  )
     Defendant.                   )
```

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

On November 16, 2023, Logan Olds filed a complaint seeking judicial review of a Social Security decision.[1] Olds seeks to appeal a final decision of the Commissioner of Social Security[2] ("Commissioner") denying his application for a period of disability and disability insurance benefits. (ECF No. 14.) For the following reasons, the Commissioner's decision is AFFIRMED.

---

[1]After the parties consented to the jurisdiction of a United States magistrate judge on September 7, 2023, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 9.)

[2]On December 20, 2023, Martin J. O'Malley was sworn in as the new Commissioner of Social Security. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this case.

## I.   BACKGROUND

**A.   Procedural History**

On February 12, 2020, Olds protectively applied for disability insurance benefits and supplemental security income, under Title II and Title XVI of the Social Security Act. (R. at 15.) Olds alleged disability beginning October 31, 2019. (Id.) Olds's claims were denied on May 7, 2021, and upon reconsideration on January 18, 2022. (Id.) On June 27, 2022, following a hearing, the ALJ issued an unfavorable decision. (Id.) Then, on May 19, 2023, the Social Security Administration's Appeals Council denied Olds's request for further review. Olds now seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B.   The ALJ's Decision and the Five-Step Analysis**

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Olds was not disabled. (R. at 15-24.) At the outset, the ALJ found that Olds qualifies for insured status requirements through December 31, 2024. (R. at 18.) At the first step, the ALJ found that Olds had not engaged in substantial gainful activity since the alleged onset date of October 31, 2019. (Id.) At the second step, the ALJ concluded that Olds had the following severe impairments: ulcerative colitis and ischemic heart disease. (Id.) The ALJ found that the impairments "significantly limit the ability to perform basic work activities as required by SSR 85-28." (Id.) At the third

step, the ALJ concluded that Olds did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Id.) Accordingly, the ALJ had to next determine whether Olds retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional postural activities; no climbing scaffolds, ladders or ropes; no exposure to heights or hazards.

(Id.) Pursuant to 20 C.F.R. § 404.1567(b), light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Additionally, light work includes jobs "requir[ing] a good deal of walking or standing, or [that] involve[] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

In reaching the RFC determination, the ALJ discussed the medical record and Olds's testimony. The ALJ summarized Olds's past visits to various doctors as follows:

> The medical evidence documents a noted history of ulcerative colitis but no treatment notes documenting subjective complaints of frequent bowel movements or severe ongoing abdominal pain.

> [The] March 2020 emergency department notes document that the claimant had a history of ulcerative colitis and was experiencing chest pain of increasing frequency and severity. His EKG was abnormal at that time, so he was transferred to another hospital for further evaluation. The claimant was diagnosed with an acute ST elevation myocardial infarction. Cardiac catheterization was performed, and the claimant underwent a percutaneous coronary intervention (PCI). His ejection fraction was noted to be normal, and 60 percent.
>
> At the claimant's follow up cardiology visit in April 2020, he reported that he was feeling well. He reported occasional dull chest pain lasting no more than a minute and denied experiencing shortness of breath, palpitations, orthopnea, or lower extremity edema. The claimant did not return to a cardiologist for over a year.

(R. at 20) (internal citations omitted). The ALJ went on to discuss more recent events in Olds's medical history:

> In August 2021, he reported that he was feeling well and that since the heart attack he had experienced two episodes of chest pain for which he used nitroglycerin with resolution. He reported no dyspnea, orthopnea, or lower extremity swelling. His physical examination was also unremarkable, and the claimant was instructed to follow up in six months.
>
> The record documents no further treatment. Notably, the record documents no treatment for complaints of ulcerative colitis difficulties.
>
> The claimant underwent a consultative physical examination in April 2021 which was conducted by Dr. Donita Keown. The claimant reported a nine-year history of ulcerative colitis. He stated that if he ate anything, just a few minutes later he had cramping and diarrhea. He also reported a history of a heart attack with coronary stenting in 2020. Upon examination, the claimant had normal heart and lung sounds. His abdomen was soft and nontender with normal bowel sounds. He also had full range of motion universally. Grip and motor strength were normal, and there was no evidence for

> sensory dysfunction. He also had a normal gait and station. There was no evidence of nutritional compromise or dehydration.

(R. at 20-21) (internal citations omitted). The ALJ then considered Olds's testimony:

> The claimant testified that he is unable to work mainly due to ulcerative colitis. He stated that he needs to go to the bathroom frequently and has lost several jobs as a result. He stated that he also had a heart attack and that because of that, he can't walk far or tolerate heat. He stated that he goes to the bathroom 30 to 40 times per day for 2 to 3 minutes each time. He stated that he was currently experiencing a flare that had been going on for the last six weeks. He testified that he can barely walk to the mailbox and back without resting.

(R. at 21.) Considering Olds's testimony in light of the medical record, the ALJ found that:

> The medical evidence of record, however, fails to support the claimant's account of the frequency, severity, and duration of his symptoms. Namely, the claimant was seen for two cardiology visits following his heart attack in which he reported mild or no chest pain and no other associated symptoms like fatigue or shortness of breath. Further, he has not been seen by any provider for complaints of frequent bowel movements or severe abdominal cramping. He has also been noted to exhibit no evidence of dehydration or nutritional compromise. After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Id.) Finally, the ALJ summarized the medical opinions and prior administrative medical findings as follows:

> The opinions of the state agency evaluating consultants are persuasive. Their opinions are based on program knowledge and are supported with detailed narratives. They are also consistent with the medical evidence of record, including evidence received after the state agency review, which documents little treatment for cardiac problems following the claimant's heart episode and no treatment for or complaints of severe symptoms related to ulcerative colitis.
>
> The opinion of examining physician Dr. Donita Keown is partially persuasive (Ex. 8F). The undersigned agrees that the evidence supports a limitation to light exertion but finds additional postural and environmental limitations are supported by the claimant's medical history.
>
> The opinion of Dr. Peter Gardner is not persuasive. The lack of any documented complaints of ongoing chest pain or severe diarrhea or gastrointestinal symptoms fails to support Dr. Gardner's opinion, which is based on the claimant's own reported history and subjective complaints.
>
> It is therefore concluded that the claimant has the capacity for work activity consistent with the residual functional capacity outlined above.

(R. at 21–22) (internal citations omitted). At the fourth step, the ALJ determined that, through the date last insured, Olds was unable to perform any past relevant work. (Id.) At the fifth step, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Id.) At the hearing, the vocational expert ("VE") testified that, considering all of the factors, Olds could perform the following jobs: Cashier II, Sales Attendant, and Counter Clerk. (R. at 23.) In sum, the VE testified

that there are approximately 1.65 million jobs in the national economy that Olds could perform. (Id.) Finding the VE persuasive, the ALJ concluded that:

> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(Id.) On July 6, 2022, the ALJ issued a written decision detailing the findings above. The Appeals Council denied Olds a request for review. (R. at 1–6.) Olds now seeks judicial review of the ALJ's decision, arguing that the ALJ's finding that he could perform light work is not supported by substantial evidence because the ALJ failed to properly evaluate medical opinions under 20 C.F.R. § 416.920c. (ECF No. 16 at PageID 662.)

## II.   ANALYSIS

### A.   Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the

Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d

709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B. Substantial Evidence Supported the ALJ's Assessment of Dr. Gardner's and Dr. Keown's Medical Opinions**

Olds argues that the ALJ's RFC finding that Olds "could perform light level work is not supported by substantial evidence because the ALJ did not properly evaluate medical opinions." (ECF. No. 16 at PageID 663.) He contends that the ALJ "failed to properly evaluate the medical opinions of Dr. Gardner . . . and Dr. Keown." (ECF No. 16 at PageID 665.) Because Olds filed his application for social security benefits after March 27, 2017, the ALJ's review of medical opinions are guided by 20 C.F.R. §§ 404.1520c, 416.920c. (R. at 190.) Under the current regulations, "an ALJ is prohibited from 'defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources.'" Roberts v. Comm'r of Soc. Sec. Admin., No. 3:22-cv-229, 2023 WL 5615359, at *5 (E.D. Tenn. Aug. 11, 2023) (quoting 20 C.F.R. § 404.1520c). Instead, the ALJ was required to consider multiple factors, including (1)

supportability, (2) consistency, (3) a source's relationship with the claimant, (4) specialization, and (5) other supporting or contradicting factors. Id. "Supportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate." Jones. v. Berryhill, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019) (quoting Pogany v. Berryhill, No. 4:18-cv-04103-VLD, 2019 WL 2870135, at *27 n.7 (D.S.D. July 3, 2019)).

Olds argues that the ALJ did not provide a sufficient justification for finding Dr. Gardner's medical opinion unpersuasive. (ECF No. 16 at PageID 665.) For the reasons below, substantial evidence supported the ALJ's determination. The ALJ determined the state agency consultant's review of Olds's medical record persuasive. (R. at 21.) The state agency consultants considered a summary of Olds's activities of daily living, which outlines how his Crohn's disease "causes vomiting and diarrhea; Need to stay near restroom; ha[s] had [Myocardial Infarction] and 100% blockage [of the] L artery[.]" (R. at 50.) The stage agency consultants noted that he has "no problem [with personal care]; can do [household] chores; problems lifting [but] no problems walking[.]" (Id.) The state agency consultants considered records from Olds's visits to various hospitals. For example, Olds visited Lauderdale Community Hospital where it was determined that he did not suffer appendicitis, Baptist Memorial Hospital for chest pain, Jackson Madison County General Hospital after suffering a heart

- 10 -

attack, and Dyersburg Regional Medical Center for congestion, multiple abrasions, and to conduct an x-ray on his right wrist. (R. at 78.)

The state agency consultants relied primarily on his visit to Jackson Clinic North and on the notes from Dr. Keown's medical assessment. Olds visited Jackson Clinic North on April 9, 2020, and the medical record indicates that the "hospital course was uncomplicated . . . [and] [h]e has continued to do well[,] [and] . . . denies shortness of breath, palpitations, orthopnea, PND and lower extremity edema." (R. at 51.) Additionally, the state agency consultants reviewed Dr. Keown's medical opinion and found that his "reported limitations are partially" consistent with the "totality of evidence in file as [Olds] would be expected to have some limitations but not to the degree described." (R. at 55.) In finding that the individual's statements were partially consistent with the record, the state agency consultants explained that they considered the summary of Olds's activities of daily living, "[t]he location, duration, frequency and intensity of the individual's pain and other symptoms[, and] [p]recipitating and aggravating factors" as detailed in the medical records. (R. at 66.)

The ALJ considered Dr. Gardner's opinion, describing it as lacking "any documented complaints of ongoing chest pain or severe diarrhea or gastrointestinal symptoms." (R. at 22.) The ALJ further concluded that Dr. Gardner's opinion was not persuasive because

- 11 -

Dr. Gardner did not support his opinion with any "documented complaints," and instead relied "on the claimant's own reported history and subjective complaints." (Id.) Specifically, in Dr. Gardner's impressions, he wrote that "[Olds] reports increasing frequency midsternal chest pain; patient also describes worsening dyspnea with only moderate exertion; patient must stop to rest and catch his breath[.]" (R. at 605.) Further, regarding Olds's ulcerative colitis and Crohn's disease, Dr. Gardener wrote that "this condition has only been minimally responsive to medication; patient describes the need to constantly go to the bathroom and suffers from acute bouts of cramping and diarrhea[.]" (Id.) Based on these impressions, Dr. Gardener concluded that the "patient is limited in most Activities by the fact that patient suffers from ulcerative colitis; he sometimes requires use of bathroom 10-15 [times per] day." (R. at 612.) Conversely, the ALJ found that the opinions of the state agency evaluating consultants were persuasive because they were "based on program knowledge and [were] supported with detailed narratives[,] and [were] consistent with the medical evidence of record." (R. at 21.) Thus, the ALJ's findings related to the state agency consultants were consistent with and supported by the entire medical record. The undersigned finds that the ALJ adhered to the regulations in considering medical opinion evidence, and that the record provided substantial evidence to support the ALJ's decision.

The ALJ found that the medical opinion of the examining physician, Dr. Keown, was "partially persuasive" and that the "evidence supports a limitation to light exertion but finds additional postural and environmental limitations are supported by the claimant's medical history." (R. at 21–22.) In making this finding, the ALJ examined the medical record and found that the "opinions of the state agency evaluating consultants" were persuasive because they were "based on program knowledge and [were] supported with detailed narratives[,] and [were] consistent with the medical evidence of record." (R. at 21.) Thus, the ALJ's findings related to the state agency consultants considered supportability and consistency, the two most important factors under 20 C.F.R. § 416.920c. Therefore, the undersigned finds that the ALJ adhered to the regulations in considering medical opinion evidence, and that the record provided substantial evidence to support the ALJ's decision.

### III. CONCLUSION

For the reasons above, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

March 15, 2024
Date

- 13 -